**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Magistrate No.:  20-MJ-183** |
| | **:** | |
| **MICHAEL KENNETH MEONI** | **:** | |
| | **:** | **Detention Hearing:  October 16, 2020** |
| **Defendant.** | **:** | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF**
**PRETRIAL DETENTION OF DEFENDANT MICHAEL KENNETH MEONI**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that defendant Michael Kenneth Meoni be detained pending the trial of this matter pursuant to 18 U.S.C. § 3142 because there is no condition or combination of conditions that will reasonably assure the safety of any person and the community. The defendant was arrested in Nevada on an arrest warrant issued by this Court and has been charged by Criminal Complaint in the United States District Court for the District of Columbia with two crimes of violence: Production of Child Pornography in violation of Title 18 United States Code Sections 2251(a) & (e) and Distribution of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(2). An analysis of the factors set forth in 18 U.S.C. § 3142 below leads to the conclusion that detention is appropriate.

**FACTUAL BACKGROUND**

On September 17, 2020 at approximately 2:00pm EST, a Federal Bureau of Investigation ("FBI") Washington Field Office ("WFO") Task Force Officer ("TFO") was acting in an undercover ("UC") capacity as part of the Metropolitan Police Department-Federal Bureau of

Investigation ("MPD-FBI") Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.  In that capacity, the UC entered a fetish website, of which he is a member and has an internal email within the site.[1] Different areas of this site are known to the UC as places where people meet, discuss, and trade original images of underage children, links containing child pornography, and videos, among other things. The UC has been a member of this fetish site for several months. A user using the screen name, "MikeandSteph," subsequently identified as the defendant Michael Kenneth Meoni, sent the UC a private email within the fetish site. The following is a transcription of the email exchange between Meoni and the UC:

> **Meoni**: Hi thanks for the add. You have kids? Married? GF? What are you into?
>
> UC: Seperated dad here dau is 8, shared custody, into everything taboo, perv, no limits.
>
> **Meoni**: Same daughter is 1
>
> UC: Very Nice! how naughty have you been ☺
>
> UC: (Provides his KIK[2] name)

On September 17, 2020, Meoni using the KIK name, "mkmsports777," with a display name of Mike Moeni, initiated contact with the UC via KIK private instant messenger. During the course of the chat the UC asked Meoni, "so how taboo and pervy are you." Meoni responded, "Very open,"  "Pics of your daughter?" Meoni informed the UC that he "Cams" with his daughter and stated that he was currently at work. Meoni asked the UC if he was active with his own daughter and asked for pictures of her.  The UC responded that he only shares live because of all the fake pictures. Meoni informed the UC that he would be alone with his daughter on Tuesday. On September 18, 2020, at 7:33a.m EST Meoni initiated contact with the

---

[1] The name of the website is known to law enforcement.  It is being withheld to protect the integrity of ongoing investigations.

[2] KIK is an instant messaging mobile application where one can transmit and receive messages, photos, and videos. Users can communicate privately with other users or in groups.

UC. Meoni asked the UC if his daughter was up and asked what she was wearing. Meoni asked the UC for a picture of his purported 8 year-old daughter. The UC asked Meoni what he had of his daughter. Meoni responded, "diaper." Meoni sent the UC an image of an infant lying on her stomach wearing a diaper and white onesie with multi-colored cats and the word "meow" repeatedly on the shirt. The pictures shows the infant is inside of a pack-n-play with several items around her, including a pink chevron blanket, a pink and green blanket, an aqua stuffed animal and a pink stuffed animal, among other items.

The UC sent back a few images of his purported 8 year-old daughter.[3] Meoni informed the UC that he licks, rubs, and ejaculates on his 12 month old daughter. During the course of the chat Meoni asked the UC to send additional images of his purported daughter. Meoni continued to send the UC images of his purported 12 month old daughter. The following are descriptions of those images sent on September 18, 2020:

1. An image of a male pulling back on the diaper of an infant exposing her upper thigh. The male is wearing a wedding band on his ring finger.  The ring has a black and silver distinctive pattern on it.

2. An image of same male pulling back the diaper of an infant exposing the infant's thigh

3. An image of same infant wearing a diaper and shirt

4. A close up image of the same infant's diaper. Infant's legs appeared to be spread with diaper on.

5. A close up image of the infant's bare vagina with her diaper pulled down.

6. An image of the same infant. She is lying on her back rubbing her eye. She is wearing a shirt and is naked from the waist down with her bare vagina exposed.

---

[3] The images the UC sent to Meoni did not depict a real child.

7.  An image of a male inserting his finger in the bare vagina of the same infant.

8.  An image of a male placing his finger on the bare vagina of the same infant

9.  A close up image of the infant's bare vagina.

The images appeared to the UC to be taken by the phone as they had "camera" listed on them through Kik. Upon receiving these images, the UC asked Meoni to take a picture of the same infant holding up 3 fingers near the infant's head for the purpose of determining that Meoni had real time access to this infant. Meoni complied and sent the UC an image of himself holding up three fingers near the infant's head. This is the same infant that is described in the above listed photos (1-9), and based on the pack-n-play, clothing, and diaper, it appeared to the UC as if the pictures had all been taken that same morning. Meoni sent one additional image of the same infant on all fours with her bare buttocks exposed.

Commercial database searches for email addresses linked to the Kik display name "Mike Moeni" yielded multiple possibilities linked to individuals named Michael Meoni (note spelling difference). Commercial database searches for Michael Meoni in Arizona yielded a single result: Michael Kenneth Meoni (DOB: XX/XX/XXXX; SSN: XXX-XX-XXXX; Arizona driver's license: XXXXXXXX); and an address of XXXXX, Laughlin, NV 89029. A social networking profile (www.facebook.com/100018578943774) was identified as belonging to Meoni. Review of publicly available information on his Facebook profile identified his fiancé as Stephanie Lee Smith (DOB: XX/XX/XXXX; SSN: XXX-XX-XXXX; Arizona driver's license: XXXXXX). Smith's Facebook profile (www.facebook.com/mikeandsteph.meoni) contained publicly viewable images of her, Meoni and their suspected 1--year old daughter. Comparison of photographs of Meoni and Smith matched the individuals in the Kik profile photo. Images of their infant child on social media matched the victim displayed in the images sent to the OCE by

4

Kik username mkmsports777.

Agents from the Las Vegas Child Exploitation Task Force obtained a search warrant for Meoni's residence on XXXXXX, his person and his phone.  Agents performed a traffic stop of a car driven by Meoni between approximately 10:00pm and 10:15pm PST.  Smith and Meoni's 17-year-old son were also in the car.  Meoni was taken and interviewed by agents.  Agents drove Smith and Meoni's son to the residence.  They arrived at his home at approximately 10:35pm to 10:45pm PST.

Smith knocked on the door to the home and a teenager, who was babysitting the younger children, answered the door.  Agents walked inside the home, and the infant depicted in Moeni's photographs, was inside of the same pack-n-play that had been depicted in the photographs.  The same stuffed animals, pink and green blanket and most of the other items from the photograph were with the infant in the pack-in-play. A search of the remainder of the apartment revealed the pink chevron blanket and the same white onesie with multi-colored cats and the word "meow" repeatedly pictured.

After waiving his Miranda rights, Meoni spoke to agents and admitted that he had sent pictures of the infant over Kik to the UC. The agent showed Meoni one of the pictures received from the UC and one that Meoni sent, and he confirmed that he sent and received those photographs.  He admitted that the ring depicted was his ring, and he was in fact wearing it at the time. He denied touching the infant's vagina, but said that he "moved" it.

## APPLICABLE LEGAL STANDARD

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and

the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence.

The crimes of Production of Child Pornography in violation of Title 18 United States Code Section 2251(a) & (e) and Distribution of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(2), are crimes of violence as defined by Congress in 18 U.S.C. §3156(a)(4)(C) and involving a minor victim, which under 18 U.S.C. § 3142(e)(2) & (3)(E) creates a rebuttable presumption upon a finding of probable cause that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to assure the safety of any other person and the community.

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial."

*United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

For the reasons that follow, the government submits that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community and that the defendant should therefore remain detained pending trial.

### A.       The Nature and Circumstances of the Offense Charged

The defendant, Mr. Meoni, is charged with Production of Child Pornography and Distribution of Child Pornography.   These are two violent offenses whose severity is illustrated by the lengthy statutory terms of incarceration and applicable mandatory minimum sentences of 15 years' imprisonment and 5 years' imprisonment, respectively.

.Moreover, the defendant's actions in this case are particularly egregious. The defendant engaged in the hands on sexual abuse of his own infant daughter.  He took pictures of himself engaging in the sexual abuse, including pictures of himself pulling down her diaper and digitally penetrating her.  He then sent those child pornographic pictures of his own infant daughter, in near real time, to another man he believed to be a pedophile.

In the course of the conversation with this man, the defendant expressed that he had done this kind of behavior before, stating that he "cams" with his daughter--i.e. livestreams sexual acts with his daughter to other people--and stating that he licks, rubs, and ejaculates on his infant daughter.  He also expressed a potential sexual interest in the purported pedophile's 8 year old daughter, asking questions about what she was wearing, and requesting child pornographic images of her.

These actions greatly underscore his level of dangerousness as discussed below and this factor strongly favors his detention.

### B.      The Weight of the Evidence Against the Defendant

As described above, the evidence against the defendant is overwhelming. including irrefutable electronic evidence, substantial physical evidence tying the defendant to the offense, and the defendant's own admissions that he distributed the images to the UC over KiK, that it was him in the images with his daughter, and that he "moved" his daughter's vagina. This factor too weighs strongly in favor of detention

### C.      The History and Characteristics of the Defendant

The defendant has no apparent criminal history. However, the nature of the defendant's actions in this case strongly indicates that his lack of criminal history does not adequately reflect his history and characteristics.  Moreover, the defendant, by his own words, has engaged in the repeated sexual abuse of his own  infant daughter by licking, rubbing, and ejaculating on her. He also by his own words, "cams" with her, sexually exploiting her in real time in front of other people for their (and/or his) sexual gratification.   The fact that he would do this, especially to his entirely defenseless own infant child demonstrates that his factor too weighs in favor of detention,

### D.      The Nature and Seriousness of the Danger to Any Person or the Community

The evidence here establishes that the defendant represents a grave danger to the community. He engaged in hands on sexual abuse of his own entirely helpless infant child, and by his own words, he did so multiple times without detection and he did so without any apparent remorse.  Adding to this inherent dangerousness is the fact that he expressed a sexual

8

interest in another purported child and sought out child pornography of her.

He also produced child pornography of his own daughter and sent it to someone he believed to be a pedophile. This is an act that not only harms the child at the time of production, but as Congress recognized "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years...." Child Pornography Prevention Act of 1996 ("CPPA"), Pub.L. 104–208, sec. 121, 110 Stat. 3009–26, reprinted in 18 U.S.C. § 2251 note at 611.

Likewise, given the electronic-based nature of much of the Defendant's criminal activity, there is no reason to believe that home confinement would substantially mitigate the danger posed by the Defendant, (if a potentially appropriate location for home confinement even could be found). This is especially so as pre-trial has stated that they cannot effectively monitor and ensure compliance with a "no internet-capable electronic devices" condition, due to the ubiquity of internet capable devices, ease of access, and pre-trial's own resource constraints. This factor weighs strongly in favor of detention.

**CONCLUSION**

For all of the reasons set forth above, and any other reasons set forth at any hearing on this issue, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

WHEREFORE, the government respectfully requests that the court grant its motion for detention of the defendant.

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY


\_\_\_/s/_____

NICHOLAS MIRANDA
Assistant United States Attorney
D.C. Bar 995769
U.S. Attorney's Office
555 4th Street, N.W., Room 10-919
Washington, D.C. 20530
202-252-7011
Nicholas.Miranda@usdoj.gov

10